IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

QUENTIN C. WARD,

                 Plaintiff,

  v.                                                           OPINION and ORDER

MARY SAUVEY, JEAN LUTSEY, HANNAH UTTER,            16-cv-290-jdp
MARY ALSTEEN, and KATHY LEMENS,

                 Defendants.[1]

---

Plaintiff Quentin C. Ward, a prisoner at the Green Bay Correctional Institution, alleges that prison officials have failed to properly treat the severe pain he suffers from his degenerative spine condition and carpal tunnel syndrome. He brings Eighth Amendment claims against one of the doctors and several nurses who he says were involved in making decisions about his pain treatment. He has filed a motion for summary judgment, which I will deny because he fails to show that he is entitled to judgment as a matter of law. The case will proceed to trial. Ward has also filed a motion for preliminary injunctive relief, which I will deny, and several other motions that I will address in the opinion below.

## SUMMARY JUDGMENT

**A. Undisputed Facts**

I draw the following facts from the parties' summary judgment materials.[2]

---

[1] I have amended the caption to reflect defendants' full names as stated in their filings.

[2] Defendants filed a reply to the proposed findings of fact that they filed in opposition to Ward's motion for summary judgment. Dkt. 67. But neither the court's summary judgment procedures nor the briefing schedule here provided an opportunity for defendants to submit

Plaintiff Quentin C. Ward is a prisoner at Green Bay Correctional Institution (GBCI). Ward suffers from degenerative disk disease, spinal stenosis, and carpal tunnel syndrome. He suffers severe pain in his neck and back and pain and numbness in his left arm and hand.

Ward was transferred from Oshkosh Correctional Institution to GBCI in September 2012. At some point prior he had been prescribed methadone to treat his severe pain, but that medication was discontinued before he got to GBCI. In June 2013 a doctor at GBCI prescribed Ward methadone. But Ward did not receive the medication. Defendant Nurse Jean Lutsey, who served as the health service manager for at least part of the events in question, told Ward that "Madison" did not approve the doctor's request for methadone. Ward suggests that a "special needs committee" denied the request. (Ward brings claims against defendant nurses Kathy Lemens, Hannah Utter, and Mary Alsteen for denying his requests for methadone when they sat on special needs committees, although the parties do not provide any proposed findings about specific committee decisions they took part in).

Over the ten-year period preceding this lawsuit, Ward had been prescribed many different pain medications. He says that none of them have truly been effective other than methadone. Ward says that his condition worsened throughout his time at GBCI.

Defendant Mary Sauvey was a physician at GBCI from October 2013 to September 2016. In 2013 she reviewed Ward's prior care and noted that he had "good functionality" over the past year being off narcotic pain medication. Sauvey says that narcotics generally are not used for "non-malignant" chronic pain. At that time, Ward had been prescribed acetaminophen by his previous doctor, and I take Sauvey to be saying that she kept that order in place.

---

such a reply. *See* Dkt. 22-1, at 2–7. So I will disregard that filing.

Sauvey saw Ward multiple times in 2014, mostly regarding a urinary-tract infection. The parties dispute whether Ward complained about back or neck pain at those appointments. But pain must have been discussed at some point, because Sauvey says that in June 2014 she switched him from ibuprofen to Celebrex for his carpal tunnel pain. It is unclear when the ibuprofen was added or if it replaced the acetaminophen. In September 2014, she referred him for surgery. The parties do not explain whether he received surgery as the result of that referral, but it does not appear that he did.

Sauvey saw Ward five times from April to July 2015 regarding urinary-tract symptoms, and he did not report pain from his orthopedic problems. In October 2015 she referred Ward to an orthopedist to consider surgery. In January 2016, Ward requested methadone. Sauvey decided to give him a course of Tramadol, a nonnarcotic medication for pain relief, and referred him to pain specialists at Aurora Hospital for another opinion. In February 2016 she told Ward that methadone would not be effective, nor was it indicated, to treat his type of pain. Ward says that at some point, Sauvey told him that it was her practice to not provide opioids to her patients unless they were cancer patients, suggesting that Ward's pain was not sufficient for such a prescription. In March 2016, Ward had carpal-tunnel-release surgery on his left arm.

Ward says that he saw nurses Lutsey, Lemens, Utter, and Alsteen numerous times in the Health Services Unit over the years, complaining about his severe pain. The records provided by Ward show that the nurses generally followed up in some way, mostly by setting an appointment with a doctor.

B. Analysis

Ward brings claims that defendants violated his rights under the Eighth Amendment. To succeed on his motion for summary judgment, Ward must show that there is no genuine

issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999).

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer*, 511 U.S. at 847. To be considered "deliberately indifferent," an official must know of and disregard "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

Although Ward focuses on methadone, his claims are not really about whether he should have been prescribed methadone, because Ward does not have a constitutional right to

any particular treatment or medication. His claims concern whether defendants properly treated his severe pain. Ward brings two sets of claims: (1) defendants Dr. Sauvey and Nurse Lutsey did not provide him with adequate pain medication as part of their direct treatment; and (2) defendant nurses Utter, Alsteen, and Lemens denied him stronger pain medication in their roles on special needs committees. I conclude that Ward fails to meet his heavy burden of showing that he deserves to win on his Eighth Amendment claims as a matter of law. That is, he fails to prove that no reasonable jury could find in defendants' favor on his claims.

The main thrust of the parties' proposed findings of fact concerns defendant Sauvey's treatment of Ward. I must consider the totality of care that Ward received, not just individual decisions. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). And the record shows that Sauvey met with Ward and provided him with treatment for his pain, albeit treatment more conservative that Ward would have liked. To win an Eighth Amendment claim at summary judgment, Ward would need to show that it is beyond genuine dispute that Sauvey's decisions were so far outside the scope of accepted medical practice that the decisions were not truly based in professional medical judgment, *see Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261– 62 (7th Cir. 1996), or that Sauvey persisted in treatment that she knew was ineffective, *see Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011).

Defendants' version of the facts is supported by at least some evidence, and therefore is enough to defeat Ward's motion for summary judgment against Sauvey. She explains that narcotics are generally not considered appropriate for problems like Ward's, and she attempted other types of treatment, including other medications and surgery referrals. A jury could conclude that this treatment was adequate, particularly given that Sauvey says that at many of their meetings, he did not complain about his back, neck, or arm pain, suggesting that his

course of treatment at the time was working. Ward disputes what he and Sauvey talked about at many of the appointments, but whether to believe Sauvey or Ward is a matter for the jury to consider. I cannot grant Ward summary judgment on his claims against Sauvey.

That leaves defendant nurses Lutsey, Utter, Alsteen, and Lemens. These claims are perhaps even more difficult for Ward because, as defendants point out, nurses acting in their normal capacity in that job do not have the authority to prescribe narcotic pain medication. I granted Ward leave to proceed on claims against Utter, Alsteen, and Lemens for their alleged role on special needs committees, under the theory that perhaps the committees had authority to prescribe medications. But Ward does not provide any proposed findings of fact concerning these defendants acting as special needs committee members. So I must deny Ward's motion for summary judgment on those claims. Ward does provide facts about meeting with these defendants in their normal capacity as nurses, but I did not allow him to proceed on claims about those meetings. Even if I had, the facts here show that the nurses generally responded to Ward's complaints by setting doctor appointments. The facts do not suggest that the nurses withheld information or otherwise blocked Ward from seeing doctors—the staff who could actually address Ward's complaints of pain by prescribing medication or other treatment.

As for Nurse Lutsey, the main allegation against her was that she did not allow Ward to have methadone when he arrived at GBCI. But the facts here do not suggest that Lutsey was responsible for that denial or had the authority to give him methadone. Ward otherwise states that he met with Lutsey at various times, but as with the other nurses, the facts here at least raise a reasonable inference that Lutsey appropriately addressed Ward's complaints by scheduling doctor appointments. So I will deny Ward's motion for summary judgment regarding the defendant nurses. All of Ward's claims will proceed to trial.

PRELIMINARY INJUNCTIVE RELIEF

Ward has filed a motion seeking a preliminary injunction, asking the court to order GBCI officials to give him stronger pain medication. Dkt. 72. I take him to be asking either for reinstatement of methadone or for a new opiate medication.

A preliminary injunction is "an extraordinary and drastic remedy" that should be granted only when the movant carries the burden of persuasion by a "clear showing." *Boucher v. School Bd. of Greenfield*, 134 F.3d 821, 823 (7th Cir.1998) (citations omitted). When the movant seeks a mandatory injunction, "an injunction requiring an affirmative act by the defendant," the motion must be "cautiously viewed" and granted only "sparingly." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997).

To obtain a preliminary injunction, the movant must show that (1) he will suffer irreparable harm before the final resolution of his claim without a preliminary injunction; (2) traditional legal remedies are inadequate; and (3) his claim has some likelihood of success on the merits. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015). Once the movant makes this showing, the court "weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to other parties or the public is sufficiently weighty that the injunction should be denied." *Id*. (citing *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012)).

The Prison Litigation Reform Act limits the scope of preliminary injunctive relief in cases challenging prison conditions. Under the PLRA, the injunctive relief to remedy prison conditions must be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012).

7

The PLRA also requires the court to "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." 18 U.S.C. § 3626.

Given these standards, I will deny Ward's motion. Ward largely relies on the summary judgment record, and he also submits various materials regarding more recent treatment following defendant Sauvey's September 2016 departure from GBCI. But the records show that prison officials continue to try different treatments for his conditions and his pain, including epidural steroid injections from an offsite pain management clinic, Dkt. 63-9, further x-rays, Dkt. 74-4, and a recommendation for surgery, Dkt. 82-1. Ward also includes an advanced practice nurse prescriber's recommendation for prescription of gabapentin to treat his pain, but he does not explain whether that recommendation was approved. Dkt. 78-12, at 8. Given the rigorous standards that I must apply to a prisoner's request for preliminary injunctive relief, I conclude that Ward has failed to show that the court should intrude into the specific treatment already being managed by prison staff.

REMAINING MOTIONS

I struck the July 9, 2018 trial date because one of the defendants was going to be on medical leave then. Dkt. 70. I allowed defendants to submit their evidence explaining the nature of the leave *ex parte* and under seal. Ward has filed two motions objecting to my striking the trial date and by doing so without letting him question the defendant about the issue or placing defendant's medical information on the public record. Dkt. 71 and Dkt. 82. The issue of striking the July trial date is now moot. With regard to my decision to have defendants submit their evidence *ex parte* and under seal, Ward notes that that his medical information is

part of the public record, while defendant's is not. But that is because Ward chose to file this lawsuit about defendants' treatment of his health problems. The case is not about defendant's medical leave, and there was no reason to hold a hearing about the appropriateness of staying the trial date. I was convinced by defendants' submission that it was appropriate to strike the trial date and keep the submission under seal. So I will deny Ward's motions.

Ward has filed motions for a scheduling conference to set a new trial date, and asking for a ruling on his summary judgment motion. Dkt. 76; Dkt. 77; Dkt. 79; Dkt. 80. Now that I am denying Ward's motion for summary judgment, I will grant his motions to hold a scheduling conference. I will direct the clerk of court to set a scheduling conference before Magistrate Judge Stephen Crocker to set a trial date and associated pretrial deadlines.

ORDER

IT IS ORDERED that:

1. Plaintiff Quentin C. Ward's motion for summary judgment, Dkt. 43, is DENIED.

2. Plaintiff's motion for preliminary injunctive relief, Dkt. 72, is DENIED.

3. Plaintiff's motions objecting to striking the trial date and keeping defendants' evidence regarding medical leave under seal, Dkt. 71 and Dkt. 82, are DENIED.

4. Plaintiff's motions for a scheduling conference, Dkt. 76; Dkt. 77; Dkt. 79; Dkt. 80, are GRANTED. The clerk of court is directed to set this case for a telephonic scheduling conference before the magistrate judge to set a trial date and associated pretrial deadlines.

Entered February 28, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge